# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| BELINDA KAYE COCHRAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 13-00061-CB-M |
| HARRISON FINANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION and ORDER

This matter is before the Court on a motion for summary judgment filed by the defendant, Harrison Finance Co. (Doc. 23.) Plaintiff has filed a *pro se* response to the motion (Doc. 28), Defendant has filed a reply brief (Doc. 29), and Plaintiff has filed a surreply (Doc. 30). After careful consideration of the issues raised, the applicable law, and the evidence submitted by the parties, the Court finds that the motion is due to be granted.

## Facts

Plaintiff Belinda Cochran was employed by the defendant, Harrison Finance Company (Harrison) on two separate occasions, August 19, 2002 to August 5, 2005 and June 30, 2008 to December 27, 2011. Harrison is a wholly-owned subsidiary of Hancock Holding Company. Another Hancock Holding subsidiary, Hancock Bank of Mississippi, performs the human resource functions for Harrison in Alabama. Cochran attended an orientation when began her second round of employment with Harrison as a Senior Manager. At that time, she signed a document entitled "Notice

of Highlighted Policies" indicating that she understood Harrison's discrimination and harassment policy.

That anti-discrimination/anti-harassment policy forbids, *inter alia*, "[a]ny discriminatory employment action or unwelcome conduct" based on sex. (Def.'s Ex. H, Doc. 23-10.) It specifically highlights sexual harassment and describes various types of behavior that constitute sexual harassment. The policy sets out the following procedure to reporting sexual harassment:

> All associates are responsible to help assure that we avoid discrimination and harassment. If you feel that you have experienced or witnessed any conduct that could violate this policy, you are encouraged to notify any one of the following:
>
> - Your supervisor
> - Your department head
> - Your Employee Relations Liaison
> - Director of Human Resources.

(*Id.*) In addition, the policy "forbids retaliation against (getting even with) anyone for reporting possible violations of this policy, assisting in making a complaint cooperating in an investigation, or filing an EEOC claim" and outlines a procedure for reporting retaliation identical to the sexual harassment reporting procedure. Further, the policy promises "to investigate all complaints . . . thoroughly and promptly" and, if a violation has occurred, to "take corrective action up to and including dismissal." (*Id.*) Cochran has also acknowledged that she was fully aware of the company's complaint procedures.

In 2009, Cochran was promoted to branch manager and in that capacity was aware of responsibilities that included enforcing company policies and procedures. Sheryl Melton, a regional employee relations liaison, provided human resources

assistance as need to branch management and was assigned to Cochran's branch. Cochran found Melton to be approachable and friendly. Cochran could, and did, contact Melton directly via company email or telephone to discuss personnel issues. Melton also visited Cochran's branch on several occasions while Cochran was working there.

On August 24, 2011, Hancock Holding's hotline received an anonymous call complaining about Jim McCroan, President of Harrison Finance in Alabama. The caller asserted that McCroan was engaging in acts of immorality, displays of unwanted affection, was promoting unqualified individuals and was having an on-going affair with a current employee. As a result of the call, Melton and Mary Ann Wilkerson, Hancock Banks' Regional Human Resource Manager, began an investigation into McCroan. Between September and December, Melton and Wilkerson interviewed more than a dozen past and present employees about McCroan.

On December 12, 2011, Melton and Wilkerson visited Cochran's branch as part of their investigation of McCroan. Cochran was aware of the purpose of the visit in advance, and she knew she was expected to tell the truth during the interview. During a three-hour interview, Cochran was asked whether she had ever witnessed anyone any management touching women in an inappropriate manner. At that point, Cochran began to cry because she believed co-workers perceived that she and McCroan were having an affair. When one of the interviewers asked why people might have that impression, Cochran responded that they may have gotten the wrong impression when McCroan had touched or rubbed her shoulders or

patted her on the leg. Cochran did not say anything to Melton and Wilkerson about having sexual relations—either consensual or nonconsensual—with McCroan. As result of the investigation, Harrison terminated Jim McCroan's employment on December 16, 2011.

On December 27, 2011, Wilkerson and Melton again met with Cochran, this time about photographs found on her company computer. In October 2011, a vendor discovered three pornographic photographs on Cochran's computer while attempting to recover a hard drive. The vendor reported the photographs to Tom Vickerman, Harrison's manager of desktop services. When the vendor's technician told Vickerman he had also reported the photos to "Sheryl", Vickerman assumed he meant "Sheryl Melton" in Human Resources. But the technician made the report to someone named "Cheryl" in IT. Thus, Human Resources did not learn about the photographs until December 21, 2011. As it turns out, two of the photographs were of Cochran herself, taken in the company bathroom. One is a torso shot in which she is wearing only a bra and panties. The other is a photo of her genitalia. The third photo was a nude male identified as DW. When Wilkerson and Melton asked Cochran if she had downloaded any her pictures onto her hard drive, she initially denied it. After seeing the evidence, she admitted that she was the person in the photos. Cochran was terminated for uploading the photographs onto the company computer.[1]

---

[1] Wilkerson and Melton subsequently discovered that Cochran had, in violation of company policy, used her company email account to send photos of herself to DW and had received DW's photo in response.

Cochran filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on June 14, 2012. In that charge, which she signed under penalty of perjury, Cochran alleged the following:

> I was hired in 2008 by the Respondent as a Senior Branch Manager. In June 2011 I was promoted to the position of Centralized Mortgage Manager. On December 27, 2011, Sheryl Melton (Assistant Vice President Employee Relations Liaison) terminated my employment. I believe I was discriminated against because of my sex.
>
> On December 13, 2011, I complained to Melton and Mary Ann Wilkerson (Regional Manager, Human Resources) that I felt uncomfortable with Jim McCroan (President, Harrison Finance Company) inappropriately rubbing my shoulders and patting me on my legs. The Respondent reported I was terminated due to the pornographic pictures loaded on to my work Computer. The pictures were discovered in October 2011, but I was not fired until after I complained.
>
> I believe I have been retaliated and discriminated against in violation of the Title VII of the Civil Rights Act of 1964, as amended.

(Pl.'s Rsp., Ex. C, Doc. 28.)

The EEOC issued a right-to-sue notice on November 15, 2012. On February 7, 2013, Cochran filed the instant action, *pro se*, against Harrison Finance. The form complaint asserts claims of "Gender discrimination, Sexual Harassment, [and] Retaliation" in violation of the Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e. (Compl. 1, Doc. 1.) The complaint alleges that Cochran was "verbally and physically sexually harassed by the President of Harrison Finance Company, Jim McCroan[,]" that she reported this harassment on December 11, 2011, that McCroan was terminated on December 16, 2011 (with benefits and a severance package), and that Cochran was terminated on December 27, 2011 without warning and in retaliation for speaking out and was denied unemployment benefits. (*Id.* 3.)

5

After this lawsuit was filed, in response to a discovery request, Cochran informed counsel for Harrison that Jim McCroan had forced her to have sex with him on eight different occasions between April 2010 and October 2011. This was the first time Cochran informed the defendant about sexual relations between McCroan and herself. Prior to this revelation, Cochran's only report of inappropriate behavior was that McCroan touched or rubbed her on the shoulders or leg, and that report was in response to questioning by Wilkerson and Melton during their investigation. *See* discussion, *supra*, at 2-3. According to her declaration in opposition to summary judgment, Cochran "was going through a bad divorce . . . and was afraid to tell anyone" about the rapes and also feared that she would lose her job if she reported McCroan "because [she] had already been warned by the District Manager at the time [and others] about the close friendship Mr. McCroan had with Human Resources and many superiors at Hancock Bank." (Pl.'s Decl., Ex. C to Pl.'s Surreply, Doc. 30.)

**Issues Raised**

Harrison has moved for summary judgment on the two claims clearly identified in Plaintiff's *pro se* complaint: (1) gender discrimination based on hostile work environment sexual harassment and (2) retaliation.[2]

---

[2] The complaint states that Harrison denied Plaintiff's claim for "unemployment benefits" and also states that the company approved McCroan's unemployment benefits and "he received a large severance package." (Comp. 3.) Although neither party has stated as much, this could be construed as an additional gender discrimination or retaliation claim. *Cf. Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) (post-employment actions can qualify as "adverse employment action" under Title VII's anti-retaliation provision); *McGuiness v. Lincoln Hall*, 263 F.3d 49 (2nd Cir. 2001) (holding disparate treatment in severance pay actionable under Title VII). However, as Harrison points out in its summary judgment motion (albeit with

6

**Legal Analysis**

*Summary Judgment Standard*

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Where the moving party also has the burden of proof at trial, "that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)  Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Clark,* 929 F.2d at 608*.*

"In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "However, we draw these inferences only "'to the extent supportable by

---

respect to the hostile work environment claim), a civil complaint is "limited by the scope of the EEOC investigation which can reasonably expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Human Res.,* 355 F.3d 1277, 1280 (11th Cir. 2005).  Consequently, because no claim for  (or related to) disparate treatment or retaliation based on severance pay was asserted in the EEOC charge, no such claim would be actionable here.

the record.'" *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n. 8 (2007) (emphasis omitted)). Furthermore, "[a] dispute over a fact will only preclude summary judgment if the dispute "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

### *Hostile Work Environment/Sexual Harassment*

Harrison argues that it is entitled to summary judgment on Cochran's hostile work environment claim for several reason: (1) the claim is barred because the harassment took place more than 180 days prior to the date the EEOC charge; (2) the scope of EEOC charge did not include the sexual harassment claims alleged in this lawsuit; and (3) Cochran unreasonably failed to use the company's complaint procedure to report the sexual harassment. The Court need not address the first two arguments because it is clear that the company had a reporting procedure in place, that Cochran knew about the procedure, and that she unreasonably failed to utilize it.

Title VII prohibits an employer from discriminating against an individual "with respect to compensation, terms, conditions, or privileges of employment because of [ ] race, religion, sex , or national origin." 42 U.S.C. § 2000e-2(a)(1). "[S]exual harassment so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment' violates Title VII." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). An employer may be, but is not always, liable for hostile work environment created by one of its employees. In two

companion cases, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the Supreme Court defined the contours of an employer's liability.

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Ellerth*, 524 U.S. at 765-66; *Faragher*, 524 U.S. at 807-08.

Harrison asserts that it has satisfied its burden as to this affirmative defense because: (1) the harassment perpetrated by McCroan did not result in any tangible employment action against Cochran: (2) the company had an adequate anti-harassment policy in place and once it received a complaint it took prompt corrective action and (3) Cochran unreasonably failed to utilize the complaint procedures set out in that policy. There is no dispute as to the first element of the affirmative defense. Cochran's termination was unrelated to the alleged

9

harassment, and she suffered no demotion, loss of pay or benefits, change in working conditions, or any other type unfavorable employment action as a result of McCroan's harassment. As to the Harrison's effort to prevent harassment, a company's anti-harassment policy is adequate if it is effectively disseminated and the policy's reporting procedures allow "alternative avenues for lodging a complaint other than a harassing supervisor." *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1298 (11th Cir. 2000). There is no question that the anti-harassment policy was adequately disseminated in this case. Furthermore, Cochran admits that she knew and understood the policy, which encouraged victims to come forward and provided multiple avenues for lodging a complaint. In that respect, the policy is similar to those sexual harassment policies found reasonable by the Eleventh Circuit. *Madray*, *id.* at 1299 (policy sufficient under *Ellerth/Faragher* where complaint procedures that did not require victim to report complaint to supervisor or through supervisor's chain of command and provided other avenues of reporting); *Coats v. Sundor Brands*, 164 F.3d 1361, 1364 (11th Cir. 1999) (per curiam) (policy required employees to report harassment to their manager, personnel department, or other manager with whom employee felt comfortable).

Cochran did not use the company's complaint procedures to report McCroan's harassment. She attempts to justify her failure to report, pointing out that she feared retaliation since she had been told that McCroan was close to the people in Human Resource. However, "[e]very employee could say . . . that she did not report the harassment earlier for fear of losing her job or damaging her career prospects. . . . [T]he Supreme Court undoubtedly realized as much when it designed

the *Faragher/Ellerth* defense, but it nonetheless decided to require an employee to make the choice [to report the harassment] if she wanted to impose vicarious liability on her employer." *Baldwin v. Blue Cross Blue Shield of Alabama*, 480 F.3d 1287, 1307 (11th Cir. 2007); *accord Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1290-91 (11th Cir. 2003) (subjective fears of reprisal do not excuse failure to report harassment).

When Harrison did receive an anonymous report about McCroan's inappropriate behavior, it took prompt action. First, Melton and Wilkerson began an investigation which lasted over three months, not an unreasonable amount of in this situation.[3] When the investigation was concluded, the company took prompt remedial action by terminating McCroan's employment.

In summary, Harrison has submitted undisputed evidence that it had an adequate anti-harassment policy in place and that Cochran was familiar with that policy and with the procedures for reporting sexual harassment. Because Cochran unreasonably failed to report McCroan, the company cannot be held vicariously liable for McCroan's actions.[4]

---

[3] The defendant has not provided much information about the scope of the investigation, except to provide notes of interviews of various employees. According to information provided in plaintiff's summary judgment response, Harrison Finance has 33 branches. Cochran implies that the three-month period between the anonymous report and McCroan's termination was too long to be considered prompt remedial action. In light of McCroan's position in the company, the number of branches (and employees) under his supervision, and the very serious nature of the charges, a three-month investigation is not unreasonable.

[4] Cochran insists that she did report that McCroan touched her inappropriately when she was interviewed on December 12, 2011. Assuming this to be true, McCroan's termination four days later qualifies as prompt remedial action.

*Retaliation*

Title VII's anti-retaliation provision makes it unlawful for an employer to retaliate against an employee because the employee (1) opposed an unlawful employment practice under Title VII or (2) participated in an investigation under Title VII. 42 U.S.C. § 20003-3(a). The precise contours of Plaintiff's retaliation claim are not well defined. The claim may possibly be based on both her participation in the investigation of McCroan during the December 12th interview and on her opposition to sexual harassment, i.e., her statement during that interview that McCroan's inappropriately rubbed her shoulders and touched her leg.

The Court evaluates a Title VII retaliation claim based on circumstantial evidence using the shifting burdens framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (2008). *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008). First the plaintiff must establish a *prima facie* case of discrimination. *Id.* If she does so, the defendant must articulate a legitimate nondiscriminatory reason for its decision. *Id.* Once a defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to the plaintiff to show that the stated reason was a pretext for discrimination. *Id.* Pretext means that the proffered reasons were not what actually motivated the defendant's decision. *Id.*

In this case, the Court need not decide whether Cochran could prove a *prima facie* case of retaliation because Harrison Finance has asserted a legitimate nondiscriminatory reason for terminating her employment—the pornographic photographs found on her computer. Cochran points out that there was a two-month time lapse between the discovery of the photos and her termination. This

gap between discovery and termination is not evidence of pretext, however, because the photos were not immediately reported to Human Resources. According to Defendant's uncontroverted evidence, the photos were discovered by a vendor who reported them to "Cheryl" in the IT department, rather than "Sheryl" in Human Resources. Consequently, Human Resources did not know about the photos until December 2011, shortly before Cochran's termination.

**Conclusion**

For the foregoing reasons, the Court finds that the motion for summary judgment is due to be and hereby is **GRANTED**.

**DONE** and **ORDERED** this the 17th day of March, 2014.

                                              **s/***Charles R. Butler, Jr.*
                                              **Senior United States District Judge**